IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VALERIE BURTON, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO.  07-2227 |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

**<u>MEMORANDUM</u>**

Giles, J.                                                                                          July 24, 2008

## I.   INTRODUCTION

Plaintiff, Valerie Burton, seeks judicial review pursuant to 42 U.S.C. §§ 405(g) of the final decision of Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"), denying her claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act ("the Act").  42 U.S.C. §§ 401-33.  Plaintiff filed a Request for Review with this court seeking reversal of the decision of the Administrative Law Judge (ALJ) and an award of disability benefits.  Defendant filed a Response to the Request for Review arguing that substantial evidence supports the Commissioner's decision that Plaintiff did not have a severe impairment as of her date last insured and, therefore, was not disabled under the Act.  The matter is remanded to the Commissioner for further proceedings consistent with this Memorandum and the attached Order.

## II.   PROCEDURAL HISTORY

On January 25, 2005, Plaintiff applied for Social Security Disability Insurance Benefits (DIB) alleging disability as of March 24, 1996, due to rheumatoid arthritis, carpal tunnel syndrome, and tendinitis.  (R. 36-38, 84.)[1]  Her case was randomly assigned for review by a Pennsylvania state agency which denied her claim on March 14, 2005.  (R. 20-23.)  See also 20 C.F.R. § 404.906 (2007) (outlining procedures to test modifications to the disability determination process).  The state agency had reviewed reports from Dr. Stanley Askin, M.D., and from Graduate Hospital, and concluded that there was no evidence of rheumatoid arthritis or carpal tunnel syndrome as of Plaintiff's date last insured.  (R. 20.  See also R. 19.)  On March 18, 2005, Plaintiff requested an administrative hearing.  (R. 24.)  Her stated reason was as follows: "Claim was based on years up to 2001[.] I have a sickness from 2004 up to now, which is a serious illness being monitored, my condition has changed."  (R. 24.)  A hearing was granted, and a Vocational Expert ("VE") was requested to give testimony to cover, primarily, the period from January 1, 2004, through the hearing date.  (R. 29, 24.)  Plaintiff, who was represented by counsel, and the VE testified before an Administrative Law Judge ("ALJ") on March 27, 2006. (R. 212-29.)

On July 28, 2006, the ALJ denied Plaintiff's claim, finding that she was not disabled within the meaning of the Act at any time from March 24, 1996, the date she alleged her disability began, through December 31, 2001, her date last insured.  (R. 10-16.)[2]  On September

---

[1] Citations to the administrative record will be indicated by "R." followed by the page number.

[2] In order to be entitled to disability insurance benefits, a claimant must establish disability on or before her date last insured.  See 20 C.F.R. § 404.131(a) (2008) ("To establish a

12, 2006, Plaintiff submitted a request for review to the Appeals Council, and on December 21, 2006, the request was denied.  (R. 6-9.)  As a result, the ALJ's determination that Plaintiff is not disabled is the final determination of the Commissioner.  On May 1, 2007, the Appeals Council extended Plaintiff's time to file a civil action.  (R. 3.)  Plaintiff timely filed her Complaint in district court on June 1, 2007.

### III.   FACTUAL SUMMARY

A.   Personal and Work History

Plaintiff was born on May 9, 1955.  (R. 36.)  She was 46 years old as of her date last insured, December 31, 2001, and she was 50 years old as of the date of her hearing on March 27, 2006.  (R. 36, 215.)  She has a high school education and lives with her husband and two daughters.  (R. 216, 222.)  Her past relevant work was as a patient transporter and a receptionist.  (R. 225.)

B.   Plaintiff's Statements and Testimony

Plaintiff testified that she had experienced longstanding symptoms of pain and stiffness in her hands and other parts of her body.  (R. 217-218.)  She reported that the pain began in 1996, and as of February 2005 she experienced "constant throbbing pain all day every day."  (R. 101.)

Plaintiff testified that she had been diagnosed with carpal tunnel syndrome and rheumatoid arthritis.  (R. 218.)  She testified that Dr. Nora Sandorfy treated her for arthritis and that Dr. Reinwicz had been her internal medicine doctor for about six years.  (R. 218-19.)  She testified that  Dr. Reinwicz treated her for high blood pressure, monitored her blood weekly, and

---

period of disability, you must have disability insured status in the quarter in which you become disabled or in a later quarter in which you are disabled.").

prescribes her Plaquenil, Prednisone, and Methotrexate. (R. 219.) She further testified that she was taking Osteobiplex for her cartilege, Lopressor for blood pressure, Tylenol III and Tramadol for pain, and calcium. (R. 219-20.) On February 25, 2005, Plaintiff reported taking calcium, iron, Kzor (potassium), Lopressor, and Prednisone, and on April 4, 2004, Plaintiff reported taking additional medications for pain and bone density. (R. 89, 94, 97.) On September 12, 2006, Plaintiff reported the following to the Appeals Council that she could not work due to her medications and lack of energy to do work or chores. (R. 9.)

Plaintiff reported that she could walk between half a block and two blocks or could climb six steps before stopping because of shortness of breath and leg stiffness. (R. 100, 204, 220.) She said she does not go out much for fear of falling and is not able to take public transportation by herself. (R. 99, 100, 101, 104, 222.) As of the date of her hearing, she had been using a cane for about eight months; she had had three accidents wherein she lost her balance and fell. (R. 220.) She stated that she can stand for about five minutes and she is "okay" when she is sitting but that she needs assistance getting out of a chair. (R. 221.) She had a bar installed in her home shower and she cannot sit in the bathtub. (R. 98.) She does not drive and cannot sit in a car for more than half an hour without having to get out and stretch her stiff legs. (R. 99.) Her fingers cramp up when she writes, and she has difficulty grasping things. (R. 101.) If she does more than her usual on a particular day, she experiences weakness in her hands and legs, stress, and "tiredness." (R. 98.)

Plaintiff testified that she had difficulty using her hands due to pain and swelling from arthritis in her fingers and hands. She stated that there are times when her hands swell to such an extent that she is unable to use a knife and fork. (R. 101, 221-22.) She has difficulty getting

dressed and cannot lift her right foot to put on a sock.  (R. 101, 222.)  She stated that she tries to

do some laundry when her husband is present to help but that her daughters and husband perform

most of the household chores.  (R. 100, 223.)  She reported that she could cook sometimes, but

that she "do[es] a lot of dropping."  (R. 99.)

   In her Appeal Disability Report dated April 4, 2005, Plaintiff checked "Yes" to the

question "Has there been any change (for better or worse) in your illnesses, injuries, or conditions

**since you last completed a disability report?**"  (R. 91 (emphasis in original).)  Although

Plaintiff had last completed a disability report on February 25, 2005, (R. 84-90), she described

the changes as "carpal tunnel of hands – can not use as much   Rhumatoid (sic) Arthritis –

walking not good.  A lot of stiffness," and she approximated that the change occurred on April

10, 2004.  (R. 91.)   In response to the question "Do you have any new physical or mental

limitations as a result of your illnesses, injuries, or conditions **since you last completed a**

**disability report?**,"  Plaintiff again checked "Yes" and described the changes as "Rhumatoid

(sic) Arthritis.  Cannot do a lot of walking, been confined more in home."  (R. 91 (emphasis in

original).)   She approximated that the change occurred on July 1, 2004.  (R. 91.)   In response to

the question "Do you have any new illnesses, injuries, or conditions **since you last completed a**

**disability report?**,"  Plaintiff checked "Yes" for a third time and described the changes as

"Rhumatoid (sic) Arthritis – a lot of pain + stiffness in joints – leg, knees, arm, ankle."  (R. 91

(emphasis in original).)   She approximated that the change occurred on August 10, 2004.  (R.

91.)

   Plaintiff also reported that, since she last completed a disability report, she had seen

medical practitioners for the illnesses, injuries, or conditions that limit her ability to work.  (R.

92.)  Specifically, she reported that she had seen Dr. Nora Sandorfy for Rheumatoid Arthritis first

on January 11, 2005, last on March 20, 2005, and would see her next on May 20, 2005.  (R. 92.)

She reported that she had seen Dr. Renkicwicz for a physical examination, general medical

concerns, and Rheumatoid Arthritis and first in September 2002, last on February 22, 2005, and

would see him next on April 25, 2005.  (R. 92.)  She reported that she had been in Graduate

Hospital from January 29, 2005, to February 5, 2005, for an allergic reaction to one of her

medications, (R. 93);  and she had seen Dr. Askin for epicondylitis and carpal tunnel for a May

12, 2004, surgery to her left hand, noting that surgery to the right hand was not done yet, (R. 97).

In addition, she reported that Drs. Sandorfy and Renkicwicz had prescribed her a variety of

medications.  (R. 93-94.)

C.    Medical History

On February 6, 1996, Plaintiff sustained an injury to her right arm during the course of

her employment at Thomas Jefferson University Hospital.  (R. 15, 51.)  Plaintiff saw Dr. Stanley

R. Askin, an orthopedic surgeon, about that injury, and she was diagnosed with epicondylitis or

"tennis elbow."[3]  (R. 15, 128-30.)  On February 7, 1997, Dr. Askin performed surgery on

Plaintiff's right elbow for chronic lateral epicondylitis.  (R. 127.)  On February 28, 1997, Dr.

Askin stated that Plaintiff was capable of light work, with no forceful use of the right hand.  (R.

15, 125.)  After surgery, Dr. Askin made multiple reports about Plaintiff's continued complaints

of right elbow pain.  (R. 120-24.)  On June 26, 1997, and August 21, 1997, Dr. Askin

documented Plaintiff's complaints of left hand pain, which he opined was "ostensibly because of

---

[3]  Epicondylitis, commonly known as "tennis elbow," is defined as inflammation of the epicondyle or of the tissues adjoining the epicondylie of the humerus.  (Def.'s Resp. 6 n.3 (citing DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 450 (26th ed. 1985)).

relative overuse of the left since she is not fully using the right [hand]." (R. 121-22.) On August

27, 1997, Plaintiff underwent a bone scan to both wrists. (R. 119-120.) The results were normal.

No pathology was found. (R. 119-120.) After a visit with Plaintiff on January 22, 1998, Dr.

Askin reported that he had no objective information that would preclude unrestricted activity, but

that Plaintiff had reported a subjective discomfort that she felt was limiting. (R. 118.) As a

result, on January 22, 1998, Dr. Askin estimated that Plaintiff could perform medium work. (R.

118.)

The ALJ noted that there were no treatment records from January 23, 1998, through the

date last insured of December 31, 2001. (R. 15.) However, the record contains Dr. Askin's

hand-written treatment notes from May 20, 1999, June 11, 2001, and April 1, 2003. (R. 131-32.)

His May 20, 1999, notes state that Plaintiff complained of pain in her arms and hands with heavy

use and complained of tenderness in her right elbow with heavy use. (R. 132.) Dr. Askin's other

notes from that date are illegible to this court. (See R. 132.) His notes from June 2001 state that

Plaintiff had a left foot operation two years earlier but was "not better," that she had right arm

and shoulder pain three weeks ago, and that she had a painful range of motion. (R. 131.) It

appears, in this court's review, that Dr. Askin's partially-legible handwritten notes from June

2001 also mention tendinitis (written as "tendinits") and prescribe an x-ray of the right shoulder.

(R. 131.) His April 2003 notes state that nothing had changed and that Plaintiff had a full range

of motion but with pain. (R. 131.)

In April 2003, Plaintiff saw Dr. Askin and complained of intermittent pain. (R. 117.) Dr.

Askin noted that Plaintiff had no desire or need for intervention and he opined that office

assistant work would be within her physical capabilities. (R. 117.) On May 10, 2003, she began

working as a receptionist.  (R. 85, 116.)  On July 16, 2003, she complained of pain in her right

arm from picking up the phone.  (R. 116.)  She noted that she could pick up the phone with her

left hand without pain but that she naturally uses her right because she is right-handed.  (R. 116.)

On July 16, 2003, Dr. Askin noted that it would be safe for Plaintiff to work if she was willing to

tolerate some discomfort, and that picking up the phone with her left hand should obviate her

complaints.  (R. 116.)

   In March 2004 Dr. Askin diagnosed Plaintiff with severe left carpal tunnel syndrome.  (R.

114.)  He performed a left carpal tunnel release surgery on May 12, 2004.  (R. 112-14.)  He noted

that there was no pathological link between Plaintiff's left carpal tunnel syndrome and the right

elbow problem of which she also complained.  (R. 114.)

   Plaintiff stopped working on March 2, 2004, due to pain in her upper right arm from

picking up the phone.  (R. 85, 116.)  On March 12, 2004, Dr. Askin wrote a letter noting that

Plaintiff was advised to get additional testing and that she would remain off work until the results

were available.  (R. 115.)  On March 21, 2004, before testing was complete, Dr. Askin noted that

Plaintiff had spoken to him several times by phone to complain that her symptoms, which he

opined were suggestive of carpal tunnel syndrome, and were too troublesome for her to continue

to work.  (R. 114.)  A March 17, 2004, electromyogram ("EMG") report by Yuh The Chen,

M.D., stated that Plaintiff had complained of numbness and pain in her left fingers for the

previous three months.  (R. 133.)  Dr. Chen noted that the EMG's abnormal findings are

consistent with left carpal tunnel syndrome.  (R. 133.)

   On August 4, 2004, Peter C. Vitanzo, Jr., M.D., evaluated Plaintiff for pain in both knees

and both ankles and diagnosed her with bilateral knee degenerative joint disease.  (R. 144-45.)

From August 24, 2004, through September 15, 2004, Plaintiff underwent physical therapy for her knees and ankles from Dr. Vitanzo and Denise Ross, P.T., of Nova Care Rehabilitation ("Nova Care"). (R. 134-43.) Plaintiff's Nova Care evaluation form, dated August 24, 2004, stated that Plaintiff reported pain in both knees beginning in March 2004 and progressing to both ankles in May 2004. (R. 141.) Plaintiff was discharged from Nova Care by her primary care physician. (R. 142.)

D.    Residual Functional Capacity ("RFC") Assessment

        No RFC Assessment of Plaintiff was made. (See R. 225.)

E.    Vocational Testimony

        In her testimony, the VE characterized Plaintiff's past relevant work as a patient transporter to be unskilled and medium work and her past relevant work as a receptionist to be semi-skilled and sedentary. (R. 225.) In response to a hypothetical scenario involving an individual who is 50 years old with a high school education, past work as a transport aide and a receptionist, inability to sit for extended periods, and inability to take public transportation alone, the VE opined that such an individual would be able to do Plaintiff's past work as a receptionist. (R. 228.)

## IV.    DISCUSSION

A.  Standard of Review

        The role of the court upon judicial review is to determine whether substantial evidence in the administrative record supports the Commissioner's final decision. See Stunkard v. Sec'y of Health & Human Serv., 841 F.2d 57, 59 (3d Cir. 1988). If the Commissioner's decision is supported by substantial evidence, the decision must be upheld, even if this court would have

reached a different conclusion. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).  The United States Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Id.</u> (citations omitted).  It is more than a mere scintilla of evidence but may be less than a preponderance.  <u>Stunkard</u>, 841 F.2d at 59.  This court's review is not <u>de novo</u>, and the evidence of record will not be weighed a second time.  <u>See Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190-91 (3d Cir. 1986).  Review of "an agency's interpretation of legal precepts, as demonstrated by its application of such precepts to the facts," is plenary.  <u>Monsour</u>, 806 F.2d at 1191.

B.  <u>Burden of Proof in Disability Proceedings</u>

In order to be found "disabled" under the Act, a plaintiff must carry the initial burden of demonstrating that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A) (2007).  To determine disability, the Social Security Administration applies a five-step test.  20 C.F.R. § 416.920 (2008); <u>Plummer v. Apfel</u>, 186 F.3d 422, 428 (3d Cir. 1999).

At step one, the Commissioner must determine whether a claimant is engaged in "substantial gainful activity," as defined in the regulations.  20 C.F.R. §§ 220.141, 416.920(b); <u>Plummer</u>, 186 F.3d at 428.  If so, then the application will be denied.  <u>Plummer</u>, 186 F.3d at 428. At step two, the Commissioner must determine whether claimant suffers from a "severe" impairment or combination of impairments.  20 C.F.R. § 416.920(c).  If not, the claimant will be denied benefits.  <u>Plummer</u>, 186 F.3d at 428.  At step three, the Commissioner must determine

whether the claimant's severe medical impairment(s) meet or equal the severity of any

impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 416.920(d).  If so,

the claimant considered disabled per se and the evaluation process ends.  Plummer, 186 F.3d at

428.  If the claimant's impairment(s) do not meet a listed condition, the Commissioner proceeds

to step four to determine whether a claimant retains the residual functional capacity (RFC) to

perform her past relevant work.  20 C.F.R. § 416.920(e)-(f).  Residual functional capacity (RFC)

is defined as "what a [claimant] can still do despite his limitations."  Burns, 312 F.3d 113, 119

(3d Cir. 2002) (quoting 20 C.F.R. § 416.945(a)).  If the claimant retains such capacity, he is not

disabled.  Plummer, 186 F.3d at 428.  If not, the Commissioner proceeds to step five.  Id.  At step

five, the burden of production shifts to the Commissioner to demonstrate that there are jobs

existing in significant numbers in the national economy that the claimant can perform given her

medical impairments, age, education, past work experience, and RFC.  20 C.F.R. § 416.920(e),

(g); Plummer, 186 F.3d at 428.

C.      The ALJ's Decision

1.      The ALJ's sequential evaluation of Plaintiff's claim.

The ALJ analyzed Plaintiff's claim in accordance with the sequential evaluation

described above.  The ALJ concluded his analysis at step two because, although he found that

Plaintiff had a medically determinable impairment of epicondylitis of the right arm as of her date

last insured, he concluded that her impairment was not severe.  (R. 14.)

2.      The ALJ erred in failing to mention or refute the contradictory medical evidence
        before him.

The ALJ in social security cases has certain affirmative duties.  In particular, "[t]he ALJ

has a duty to hear and evaluate all relevant evidence in order to determine whether an applicant is entitled to disability benefits." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). The ALJ must give some indication of the evidence he rejects and his reasons for discounting such evidence. Burnett v. Comm'r of Soc. Sec. Admin,, 220 F.3d 112, 121 (3d Cir. 2001). Specifically, an ALJ must mention or refute contradictory medical evidence before him, Burnett, 220 F.3d at 121, and must provide some explanation for a rejection of probative evidence that would suggest a contrary disposition, Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994) (citation omitted). The ALJ may properly accept some parts of the medical evidence and reject other parts, but he must consider all the evidence and give some reason for discounting the evidence he rejects. Burnett, 220 F.3d at 121. Without such explanations, this court, upon review, "cannot tell if significant probative evidence was not credited or simply ignored." Cotter, 642 F.2d at 705. An ALJ may reject outright the opinions of a treating physician "only on the basis of contradictory medical evidence." Plummer, 186 F.3d at 429 (citing Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985)).

Here, the ALJ erred by failing to mention or refute the contradictory medical evidence before him. The ALJ incorrectly stated that there were no treatment records from January 23, 1998, through December 31, 2001 – Plaintiff's date last insured. (R. 15.) His review of the record failed to cite clearly relevant medical evidence: Dr. Askin's hand-written treatment notes from May 20, 1999, and June 11, 2001. (R. 131-32.) Dr. Askin's May 20, 1999, notes state that Plaintiff complained about her arms and hands with heavy use and complained of tenderness in her right elbow with heavy use. (R. 132.) Dr. Askin's notes from June 11, 2001, state that Plaintiff had a left foot operation two years earlier but was "not better," that she had right arm

and shoulder pain three weeks earlier, and that she had a painful range of motion.  (R. 131.)

Although Dr. Askin's handwritten notes from June 11, 2001, are difficult to decipher, it appears

to the court that his notes mention tendinitis.  (R. 131.)  In rejecting Plaintiff's claim, the ALJ

stated that tendinitis was one of the conditions that "the claimant failed to establish through her

testimony and medical records . . . were severe or even existent prior to her date last insured."

(R. 15.)  A fair and comprehensive determination process would have required consideration of

all Dr. Askin's notes present in the administrative record.

Because the ALJ failed to even mention Dr. Askin's May 20, 1999, and June 11, 2001,

notes, this matter must be remanded so that the ALJ can address Dr. Askin's medical opinion and

observations as of those dates.

3.    The ALJ erred in failing to consider medical evidence subsequent to Plaintiff's
      date last insured.

After concluding that Plaintiff had failed to establish the existence or the severity of her

arthritis, tendinitis, and carpal tunnel syndrome prior to her date last insured, the ALJ stated that

"[r]ecord evidence of treatment after the claimant's date last insured . . . is not relevant to this

determination as the claimant's alleged disability prior to her date last insured has not been

established."  (R. 15.)  To the extent that there was lay evidence of Plaintiff's impairments prior

to her date last insured,[4] the ALJ's legal determination is incorrect.

"Retrospective diagnosis of an impairment, even if uncorroborated by contemporaneous

medical records, but corroborated by lay evidence relating back to the claimed period of

---

[4]  Plaintiff stated in her disability benefits application that her impairments started in
1996.  (R. 36.)  At the hearing before the ALJ, neither the ALJ nor Plaintiff's counsel asked
when the impairments began.

disability can support a finding of past impairment."  Newell v. Comm'r of Soc. Sec. Admin.,

347 F.3d 541, 547 (3d Cir. 2003) (allowing consideration of medical evidence commencing

seven months after plaintiff's date last insured).  As the Third Circuit wrote in another case,

"[T]he lack of contemporaneous medical evidence of an objective nature is not necessarily

determinative as to the onset date, and to the extent the ALJ's decision was based on a legal

determination that the onset date of an impairment had to be proved by such medical evidence, it

is erroneous."  Kelley v. Barnhart, 138 Fed. App'x 505, 508 (3d Cir. 2005).  The court remands

this matter for the ALJ to reconsider his treatment of Plaintiff's medical evidence subsequent to

her date last insured.

> 4.      The ALJ's decision that Plaintiff's conditions were not severe was not based on
>         substantial evidence.

According to the Third Circuit Court of Appeals, "[t]he burden placed on an applicant at

step two [of the sequential disability evaluation] is not an exacting one."  McCrea v. Comm'r of

Soc. Sec. Admin., 370 F.3d 357, 360 (3d Cir. 2004).  Rather,

> The step-two inquiry is a de minimis screening device to dispose of
> groundless claims.   An impairment or combination of impairments
> can be found "not severe" only if the evidence establishes a slight
> abnormality or a combination of slight abnormalities which have
> no more than a minimal effect on an individual's ability to work. . .
> Only those claimants with slight abnormalities that do not
> significantly limit any basic work activity can be denied benefits at
> step two.  If the evidence presented by the claimant presents more
> than a slight abnormality, the step-two requirement of "severe" is
> met, and the sequential evaluation process should continue.
> Reasonable doubts on severity are to be resolved in favor of the
> claimant.

Newell, 347 F.3d at 546 (internal citations and quotations omitted).  "Due to this limited

function, the Commissioner's determination to deny an applicant's request for benefits at step

two should be reviewed with close scrutiny.  We do not suggest, however, that a reviewing court should apply a more stringent standard of review in these cases.  The Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole."  McCrea, 370 F.3d at 360-61.  "[B]ecause step two is to be rarely utilized as basis for the denial of benefits, its invocation is certain to raise a judicial eyebrow."  Id. at 361 (citation omitted).

When determining whether an impairment is severe, an ALJ must provide an adequate basis on which it rests so that the reviewing court can determine whether the administrative decision is based on substantial evidence.  Cotter, 642 F.2d at 704.  An adequate basis includes both an expression of the evidence considered supporting the result, as well as an indication of the evidence that was rejected.  Id. at 705.

In disability benefits cases, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."  SSR 96-7p, 1996 WL 374186, at *5-6 (July 2, 1996); Newell, 347 F.3d at 547; Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (holding that the fact that a "claimant may be one of the millions of people who did not seek treatment . . . until late in the day" was not a substantial reason to reject that an impairment existed).  But see Kelley v. Barnhart, 138 Fed. App'x 505, 509 n.2 (3d Cir. 2005) ("in Newell, we noted that the lack of contemporaneous medical evidence was not dispositive where the claimant provides an adequate explanation for the failure to seek regular medical treatment for the time in question. 347 F.3d at

547.  Here, Kelley offers no explanation as to why she refrained from seeking regular medical treatment for the period in question.").

Although all impairments must be supported by medical evidence, that medical evidence need not be contemporaneous.  "Retrospective diagnosis of an impairment, even if uncorroborated by contemporaneous medical records, but corroborated by lay evidence relating back to the claimed period of disability, can support a finding of past impairment."  Newell, 347 F.3d at 547.  With some impairments, an ALJ can consider medical evidence obtained many years after the alleged onset date.  Walton v. Halter, 243 F.3d 703 (3d Cir. 2001) (holding that the ALJ erred when he rejected opinion of recent treating physicians when the date of last insured occurred more than thirty years prior).

Furthermore, non-medical evidence can support an onset date prior to a plaintiff's date last insured.  Social Security Ruling 83-20 provides that, in disabilities of non-traumatic origin, "[t]he starting point in determining the date of onset of disability is the individual's statement as to when disability began[, . . .] found on the disability application and on the . . . Disability Report."  SSR 83-20, 1983 WL 31249, at *2 (November 30, 1982).[5]  The decision maker then looks to work history and medical and other evidence, and the weight to be given any of the relevant evidence depends on the individual case.  Id.  "[T]he date alleged by the individual should be used if it is consistent with all the evidence available.  When the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy.  However, the established onset date must be fixed based on the facts and can

_____

[5] Social Security Rulings are binding on all components of the Social Security Administration.  20 C.F.R. § 402.35(b)(1);  Walton, 243 F.3d at 708.

never be inconsistent with the medical evidence of record."  Id. at *3.  But see Kelley v.

Barnhart, 138 Fed. App'x at 509 n.2 (stating that an ALJ determination that the onset date of an

impairment must be proved by contemporaneous medical evidence is harmless error if there is no

non-medical or lay evidence supportive of a disability onset date prior to a plaintiff's date last

insured).  Lay evidence need not be corroborated by contemporaneous medical evidence to be

credible.  Newell, 347 F.3d at 548.  An "individual's statements about the intensity and

persistence of pain or other symptoms or about the effect the symptoms have on his or her ability

to work may not be disregarded solely because they are not substantiated by objective medical

evidence."  SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996); Sousa v. Callahan, 143 F.3d 1240

(9th Cir. 1998) (finding the length of time between the actual events and the testimony and the

lack of corroborating objective evidence as reasons for rejecting the lay testimony insufficient

justifications for the rejection of lay testimony).

  "Particularly in the case of slowly progressive impairments, it is not necessary for an

impairment to have reached listing severity (i.e., be decided on medical grounds alone) before

onset can be established."  SSR 83-20, 1983 WL 31249, at *2.

> With slowly progressive impairments, it is sometimes impossible
> to obtain medical evidence establishing the precise date an
> impairment became disabling.  Determining the proper onset date
> is particularly difficult, when for example, the alleged onset and
> the date last worked are far in the past and adequate medical
> records are not available.  In such cases, it will be necessary to
> infer the onset date from the medical and other evidence that
> describe the history and symptomatology of the disease process. . .
> . . . . .  How long the disease may be determined to have existed at
> a disabling level of severity depends on an informed judgment of
> the facts in the particular case.  This judgment, however, must have
> a legitimate medical basis.  At the hearing, the administrative law
> judge (ALJ) should call on the services of a medical advisor when

onset must be inferred.

Id. at *3; Walton, 243 F.3d at 708-09.

In concluding that Plaintiff did not have a severe impairment, the ALJ here reasoned that: (1) "[t]here are no other treatment records as of [January 23, 1998,] through the date of the last insured of December 31, 2001"; and (2) the claimant is not fully credible because she "failed to establish through her testimony and medical records that these conditions were severe."  (R. 15.) Both of these reasons are flawed.

Plaintiff presented evidence of her diagnosis of carpal tunnel, rheumatoid arthritis, and tendinitis.  These diagnoses – regardless of when they occurred – may support a finding that Plaintiff's impairment was severe as of her date last insured.  Although the Plaintiff here did not provide any explanation regarding her lack of earlier treatment for certain conditions, the ALJ was still required to consider other information in the case record that could explain infrequent or irregular medical visits.  Id.   The ALJ erred in failing to consider evidence of treatment after the Plaintiff's date last insured.

In addition, Plaintiff's testimony demonstrates that she had experienced longstanding symptoms of pain and stiffness in her hands and other parts of her body that have impaired her ability to walk, sit, and maneuver with her hands, and Plaintiff's statements were corroborated by her history of complaints to her doctors since 1996.  The mere fact that such evidence may not have been corroborated by contemporaneous medical evidence diagnosing her present conditions should not have been not fatal to her case.  Newell, 347 F.3d at 547.  Thus, the ALJ improperly concluded that Plaintiff did not have certain impairments or that those impairments were not severe simply because Plaintiff did not have contemporaneous medical records.

Further, the ALJ erred by discrediting Plaintiff for a lack of testimony or medical evidence regarding her condition prior to her date last insured.  Courts "ordinarily defer to an ALJ's credibility determination because he or she has the opportunity at a hearing to assess a witness's demeanor."  Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003).  However, there are exceptions, see id, and this case presents one of them.

The ALJ discredited Plaintiff's testimony about her work history and her physical difficulties.  He wrote,

> The claimant testified that she has not worked since her alleged disability onset date due to arthritis, carpal tunnel syndrome, and tendonitis [sic] and that she has a limited ability to sit, stand, walk, lift and carry and use of [sic] her hands.  While this may be true, the claimant has failed to establish through her testimony and medical records that these conditions were severe or even existent prior to her date last insured.  Therefore the claimant is not fully credible (Social Security Ruling 96-7p).

(R. 15.)  This credibility determination had no basis in the record.  The ALJ  posed no questions to Plaintiff that would enable him to make an adverse credibility determination about her.  See Reefer, 326 F.3d at 380.  Rather, as in the Reefer case, "the ALJ appeared to base his credibility determination on the fact that [Plaintiff's] medical records did not explain why she was experiencing the symptoms she described in her responses to questionnaires.  By relying solely on those responses, the ALJ was not able to assess [plaintiff's] demeanor in answering those questions, which could have shed additional light on her credibility."  Id.  Because of these deficiencies, the court does not defer to the ALJ's credibility determination and concludes that the ALJ had an insufficient record basis to come to the conclusion that Plaintiff was not fully credible.  Id.  The ALJ must demonstrate that any credibility finding is based on the entire record.

Accordingly, the matter is remanded for the ALJ to make a credibility finding based on the record as a whole.

For the aforementioned reasons, the court finds the ALJ's conclusion that Plaintiff's impairment was not severe was not based on significant evidence.

5.      Upon Remand, the ALJ Must Obtain All Relevant Medical Records.

"ALJs have a duty to develop a full and fair record in social security cases."  Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995).  The duty to ensure a complete record exists even when a claimant is represented by counsel.  See Boone v. Barnhart, 353 F.3d 203, 208 n.11 (3d Cir. 2003) (citing with approval Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000)). "Although the burden is upon the claimant to prove his disability, due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails."  Hess v. Sec. of Health Educ. and Welfare, 497 F.2d 837, 840 (3d Cir. 1974).  An ALJ does not have a duty to search out all relevant evidence that might be available, but an ALJ "shall inquire fully into the matters at issue and shall receive in evidence the testimony of witnesses and any documents which are relevant and material."  Id.

Here, the ALJ may have had a duty to develop the record by causing Plaintiff's medical records to be obtained from Dr. Sardorfy and Dr. Renkiewicz.  See Hess, 497 F.2d at 841 (holding that the ALJ had a duty to obtain medical records because, "although no definite commitment was made, the claimant may well have inferred that the latest [medical] records . . . would be obtained before a decision would be handed down"); Boone, 353 F.3d at 208 n.11

(noting that the ALJ has a duty to follow up on counsel's inquiry to a witness during a DIB

hearing in order to ensure a complete record).  The ALJ began the hearing by mentioning the

absence of records from Dr. Sandorfy:

> ALJ:     All right. We don't have anything from this Dr. Nora Sandorfy.
>
> [ . . . ]
>
> ATTY:   We're going to have those records for you.  I would ask for a bit more time. . .
>
> [ . . . ]
>
> ALJ:     Because the records that you do have in here don't even have a diagnosis of rheumatoid arthritis.
>
> ATTY:    Well, that's a fairly recent diagnosis, I think.
>
> CLMT:        A year and a half.
>
> [ . . . ]

(R. 215.)  Plaintiff's attorney again mentioned missing records at the close of the hearing:

> ATTY:    Okay I have nothing further, Your Honor.  I'm going to get the medical records –
>
> ALJ:     Okay.  I think we're better off with the medical records.
>
> ATTY:    I think you're right.
>
> ALJ:     All right.  We'll give you a chance to do that.
>
> ATTY:   Okay.  As a part of the record.
>
> ALJ:     Okay.  Very good.

(R. 228.)  Plaintiff testified that she had been seeing Dr. Sandorfy for six years.  (R. 219.)  No

records from Dr. Sardonfy were made part of the administrative record and none were mentioned

in the ALJ's decision.  Plaintiff stated in her Disability Report that she had been seeing Dr.

Renkiewicz since 2002, (R. 92), but, similarly, that physician's records never made it to the

administrative record for purposes of Plaintiff's DIB application.

      The court need not decide whether the ALJ's failure to obtain the records of Dr. Sardorfy

and Dr. Renkiewicz is a reason for remand because remand is otherwise warranted.  See Reefer,

326 F.3d at 380 ("We need not decide whether the ALJ's failure to obtain these 1999 records,

without more, provides a reason for remand because we believe that remand is otherwise

warranted.").[6]  However, because the ALJ acknowledged that the parties would be "better off"

with Dr. Sandorfy's records, the ALJ should ensure that those records are part of the

administrative record upon remand.

## IV.   CONCLUSION

      Having found that remand is appropriate for the foregoing reasons, the court remands the

matter to the Commissioner.  An appropriate Order follows.

---

[6]  See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir.2001) ("[E]vidence first presented to the district court [and not to the ALJ] must not only be new and material but also be supported by a demonstration by claimant of good cause for not having incorporated the new evidence into the administrative record." (Internal quotation and citations omitted).  Here, Plaintiff did not present records from Drs. Sandorfy and Renkiewicz to the court.